## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

CAROL L. VEILLEUX,                                    CV 12-103-M-DLC-JCL

                Plaintiff,

                                       ORDER

    vs.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                Defendant.

_____

Plaintiff Carol Veilleux ("Veilleux") brings this action against Defendant

Hartford Life and Accident Insurance Company ("Hartford") seeking

reinstatement of long-term disability insurance benefits she claims are due her

under an ERISA-governed employee welfare benefit plan.  Veilleux has filed a

motion for leave to conduct discovery.  Veilleux's motion is granted in part and

denied in part as set forth below.

## I.      Background

Veilleux was injured in a car accident in 1995.  She continued to experience

pain from the accident, and was eventually diagnosed with degenerative disc

disease.  Administrative Record ("A.R.") 795, 868.   Veilleux was insured at the

time under a long term disability insurance policy ("the Plan") provided through her former employer, Bio-Rad Laboratories, and administered by Hartford. There is no dispute that the Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.

In December 1998, Veilleux applied for long term disability benefits under the Plan. A.R. 958-61. Hartford approved her application in June 1999, and paid her benefits for the next twelve years. A.R. 1120-22. During that period, Hartford corresponded with Veilleux a number of times, requested periodic updates from her medical providers, and conducted surveillance activities on three different occasions.

In May 2011, Hartford conducted a medical assessment of Veilleux's condition and requested that she participate in an orthopedic independent medical examination ("IME"). A.R. 1156-57, 966-78. On October 27, 2011, Hartford advised Veilleux that it had completed its review of her claim and was terminating her benefits. A.R. 1031-35. Hartford advised Veilleux that she had the right to appeal its decision within 180 days. A.R. 1034.

Veilleux, who was by this time represented by counsel, submitted a written

appeal on April 23, 2012.[1]  Several days later, Veilleux provided Hartford with

additional medical records in support of her appeal.  A.R. 681.  On May 9, 2012,

Hartford advised Veilleux in writing that it had received her appeal and indicated

that it would "make an appeal decision as soon as possible and should make the

decision within 45 days of the receipt of the request."  A.R. 1027.  Hartford's

letter also explained if there were special circumstances preventing Hartford "from

making the decision in that time, the evaluation period [could] be extended by an

additional 45 days."[2]  Dkt. 1027.

On May 25, 2012 – 32 days after its receipt of her request for appeal –

Hartford advised Veilleux that it needed more information to evaluate her claim

and so asked her to sign an enclosed authorization for medical records.  A.R. 1024.

Although Hartford did not specifically ask that she do so, Veilleux provided

Hartford with additional medical records from her treating physician.  Hartford

received those records on June 8, 2012.  A.R. 1023.  By that time, Hartford had

also received Veilleux's executed medical release.  A.R. 1023.

Just one day earlier, on June 7, 2012, the initial 45-day deadline within

_____

[1] The written appeal is dated April 20, 2012, but was received by Hartford
on April 23, 2012.   A.R. 801-70; Dkt. 20-3.

[2]  This 45-day period is established by regulation.  29 C.F.R. § 2560.503.1.

which Hartford had indicated it would decide Veilleux's appeal passed. Hartford wrote to Veilleux on June 14, 2012, confirming its receipt of the additional medical records she had provided and indicating that it considered her appeal to have been perfected on June 8, 2012 – the date on which it had received Veilleux's supplemental medical records. A.R. 1023. Based on that date, Hartford advised Veilleux that "the 45 days for Appeals to render a decision [would] end on July 23, 2012" and explained that it was referring her "file to a medical consultant for an assessment." A.R. 1023. Veilleux received Hartford's letter on June 18, 2012, by which time she had already initiated this litigation with the filing of her complaint on June 15, 2012. Dkt. 1, 27-3. As of the date of this Order, Hartford has not issued a decision on Veilleux's appeal.

Veilleux brings suit under ERISA seeking reinstatement of her long term disability benefits, civil penalties, equitable relief, and a clarification of her right to future benefits. Dkt. 4. Veilleux has moved for leave to conduct a broad range of discovery, including the opportunity to depose her treating and examining physicians. Dkt. 20, at 11. She also hopes to undergo another functional capacity examination, obtain the results of Hartford's surveillance efforts, and inquire into the scope and extent of Hartford's alleged conflict of interest. Dkt. 20, at 11-14. Hartford resists Veilleux's effort to obtain discovery.

## II.    Discussion

Generally, litigants in a civil action may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1).  In an ERISA case like this one, however, discovery plays a far more limited role because the primary purpose of ERISA is "to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).

As both parties recognize, the availability and scope of discovery in an ERISA action is directly related to the applicable standard of review.  See e.g. *Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 647 (E.D. Cal. 2009).  In order to resolve Veilleux's motion for leave to conduct discovery, then, this Court must first determine whether a de novo or abuse of discretion standard of review applies in this case.

An ERISA plan administrator's decision to deny or terminate benefits is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  "When the plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits, that determination is reviewed for abuse of discretion." *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 981 (9th Cir. 2005) (citing *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1992)).

Here, it is undisputed that the Plan gave Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." A.R. 1241.  In light of this clear and unequivocal grant of discretion to the administrator, it appears at first glance that Hartford's decision terminating benefits should be reviewed for an abuse of discretion.  Veilleux nonetheless argues she is entitled to de novo review of the decision to terminate her benefits because of serious procedural irregularities in Hartford's handling of the administrative appeal process.

The Ninth Circuit has held that courts are to take any "procedural irregularities" into account when reviewing a plan administrator's decision for an abuse of discretion. *Abatie v. Alta Health & Life Ins.*, 458 F.3d 955, 972 (9th Cir. 2006).  In most such cases, procedural irregularities are but one factor for the court to consider in deciding whether the administrator abused its discretion. *Abatie*, 458 F.3d at 972.  In some cases, however, an administrator's failure to comply with ERISA's procedural requirements may be "so substantial as to alter the

standard of review." *Abatie*, 568 F.3d at 971.  Procedural violations may warrant

de novo review if they "are so flagrant as to alter the substantive relationship

between the employer and the employee, thereby causing the beneficiary

substantive harm." *Abatie*, 458 F.3d at 971 (quoting *Gatti v. Reliance Standard

Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005).

Here, Veilleux argues that Hartford's failure to make a timely decision, or

any decision at all for that matter, on her administrative appeal constitutes such a

severe violation of ERISA's procedural requirements and the terms of the Plan

that a de novo standard of review should apply.  By regulation, Hartford was

required to make a decision on Veilleux's appeal within 45 days after receiving

her request for review, with one 45-day extension possible.[3]  29 C.F.R. §

2560.503-1(i)(1)(i) & (3)(i).

The Plan itself apparently provided for a slightly longer period of time,

stating that Hartford was to make a decision "no more than 60 days after the

receipt of the request, except in special circumstances, [] but in no case more than

120 days after the request for review [was] received."  A.R. 1241.

---

[3] If Hartford had determined that it needed more time to decide Veilleux's
appeal due to "special circumstances," it could have obtained the 45-day extension
by giving Veilleux written notice to that effect.  29 C.F.R. § 2560.503-1(i)(1)(i).
Hartford does not argue that it either sought or obtained such an extension..

Notwithstanding the Plan's reference to a 60-day time period, Hartford advised Veilleux that it would decide her appeal within the 45-day period provided for by regulation.  A.R. 1241.

Hartford received Veilleux's request for review on April 23, 2012, which means that the initial 45-day period within which it was to make a decision expired on June 7, 2012, and the 120-day period provided for in the Plan ended on August 21, 2012.   It is undisputed that Hartford did not issue a decision within either of those two time frames, and still has not made a decision on Veilleux's appeal.  Veilleux argues that Hartford's failure to comply both with the terms of the Plan and ERISA's regulatory deadlines means that a de novo standard of review should apply.

For support, Veilleux relies primarily on *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan,* 349 F.3d 1098 (9th Cir. 2003).  The plan at issue in *Jebian* provided that if the plan administrator did not respond to the claimant's appeal within 60 days or obtain an extension, the claim would "be deemed to have been denied on review."  *Jebian*, 349 F.3d at 1103. The ERISA regulation in effect at the time similarly stated that if the administrator had not decided the appeal within 60 days, the appeal was "deemed denied." *Jebian*, 349 F.3d at 1103; 29 C.F.R. § 2560.503-1(h)(1998). In addition, the

regulation and Plan both "deemed any claim denied unless there was a final determination within" 120 days of the appeal. *Jebian*, 349 F.3d at 1103-04.

The plan administrator in *Jebian* received the plaintiff's letter appealing the denial of her long term disability benefits on November 16, 1998, but did not respond until March 15, 1999 – 119 days later. *Jebian*, 349 F.3d at 1102. At that point, the administrator informed the plaintiff that it was leaving "the appeal pending to consider further medical documentation." *Jebian*, 349 F.3d at 1102. Three months later, the administrator wrote to the plaintiff again stating that it was still awaiting medical records, and so "the appeal therefore remained pending." *Jebian*, 349 F.3d at 1102. By the end of September 1999, the plaintiff was still awaiting a decision on his appeal and so filed his complaint in district court. *Jebian*, 349 F.3d at 1102. Approximately one month later, the administrator sent the plaintiff "a letter finally denying his claim for long-term disability benefits." *Jebian*, 349 F.3d at 1102.

The Ninth Circuit applied a de novo standard of review, holding that "where, according to plan and regulatory language, a claim is 'deemed...denied' on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*." The court qualified its holding, however, explaining that in some cases deference may nonetheless "be due to a plan administrator that is engaged in a good faith attempt

to comply with its deadlines when they lapse." *Jebian*, 349 F.3d at 1103. But because that was not the situation before it, the *Jebian* court applied a de novo standard of review.

As Hartford notes, the Ninth Circuit has since clarified that a violation of the time limits established by regulation is insufficient to alter the standard of review. *Gatti*, 415 F.3d at 982. In G*atti*, the plaintiff requested review of a decision terminating her long term disability benefits, and the plan administrator denied her appeal 279 days later. *Gatti*, 415 F.3d at 981. The plaintiff then filed suit in district court. *Gatti*, 415 F.3d at 981. As in *Jebian*, the ERISA regulations in effect at the time provided that a claim was deemed denied on review if it was not decided by the administrator within the 60-day and 120-day deadlines. Unlike *Jebian*, however, the plan at issue did not include any corresponding time limits. *Gatti*, 415 F.3d at 982. The *Gatti* court concluded that the "deemed denied" language in the regulations was, standing alone, insufficient to cut off the administrator's discretion, and so reviewed the administrator's untimely decision for an abuse of discretion. Under *Gatti*, "procedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Gatti*, 415 F.3d at 985. *Gatti* made clear that

*Jebian* controls only when the plan itself deems a claim denied if not decided within a certain period of time, thereby eliminating the administrator's discretion to decide the claim. *Gatti*, 415 F.3d at 982-83.

Veilleux argues that is precisely the situation here. Unlike the plan in *Gatti*, which did not contain any time limits, the Plan at issue in this case states that "[a] decision will be made by The Hartford no more than 60 days after receipt of the request [for review], except in special circumstances (such as the need to hold a hearing), but in no case more than 120 days after the request for review is received." A.R. 1241. Veilleux takes the position that Hartford failed to comply with the terms of the Plan because it did not decide her appeal within 120 days, at which point it was deemed denied. Veilleux maintains that Hartford thus "failed to exercise its discretion and a de novo standard of review applies" under both *Jebian* and *Gatti*. Dkt. 27, at 4.

Unlike the plan in *Jebian*, however, the Plan under which Veilleux was insured does not provide that a claim will be "deemed denied" if Hartford fails to make a decision within 120 days. This is particularly significant in light of the fact that the ERISA regulation applicable in both *Jebian* and *Gatti* has since been amended to eliminate the "deemed denied" language. 29 C.F.R. § 2560.503(1)(l); *Gatti*, 415 F.3d at 982 n.1. The amended regulation, which applies to claims filed

after January 1, 2002, now provides that if an administrator fails to "establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan..."  29 C.F.R. § 2560.503(1)(l).  The amended regulation thus provides a mechanism by which a claimant may bring suit in federal court if the administrator does not make a timely decision on an administrative appeal, but does not expressly eliminate the administrator's discretion.  In fact, nothing in the Plan or the applicable regulations provided that Veilleux's claim would be "deemed denied" if Hartford did not issue a decision within 45, 60, or 120 days. This case is thus distinguishable from both *Jebian* and *Gatti.*

Veilleux nevertheless asks this Court to construe the time limitations set forth in the Plan as a "deemed denied" clause, thereby entitling her to de novo review under *Jebian*.  For support, Veilleux relies on the unpublished, non-precedential case of *Capianco v. Long-Term Disability Plan of Sponsor Uromed Corp.*, 2007 WL 2399639 (9th Cir. Aug 22, 2007).  The Ninth Circuit began its cursory analysis by noting that the plan provided that the administrator would "make a decision 'in no case more than 120 days after the request for review is received.'" *Capianco*, 2007 WL 2399639 *1 (quoting the plan).  As in this case, it was undisputed in *Capianco* that the administrator "never rendered a final decision

12

on [the plaintiff's] appeal." *Capianco*, 2007 WL 2399639 *1. Relying on *Jebian*, the *Capianco* court concluded that because the administrator "violated a 'limitation on the exercise of discretion...which...is expressly contained in the plan itself,' there was no exercise of discretion to which a court could defer and de novo review is appropriate." *Capianco*, 2007 WL 2399639 *1.

To the extent Veilleux claims that this Court is compelled under *Capianco* to read the time limitations set forth in the Plan at issue here as a "deemed denied" clause, she is mistaken. For one thing, it is not entirely clear whether the *Capianco* court quoted the pertinent plan language in its entirety, and so it is not possible to tell whether or not the plan included the "deemed denied" phrase that is noticeably missing here. Nor is it possible to make this determination from the district court's underlying opinion, which quotes some but not necessarily all of the pertinent language. Dkt. 27-5, at 9. It is also worth noting that, as in both *Jebian* and *Gatti,* the old ERISA regulation with its "deemed denied" language applied to the plaintiff's claim in *Capianco*, which was submitted before January 1, 2002. Dkt. 27-5, at 2, 9. Presumably because the district court's decision preceded *Gatti,* which distinguished between the effect of violating time limits set forth in a plan versus those established by regulation, the court did not make clear whether the plan also contained the "deemed denied" language. Dkt. 27-5. While

the Ninth Circuit subsequently agreed that de novo review was appropriate under the circumstances, it did so without any discussion of the intervening *Gatti* decision and whether the plan deemed a claim denied if not decided within the time limits set forth therein. This Court thus finds that *Capianco* is of little persuasive value.

The fact that Hartford never issued any decision at all on Veilleux's appeal also distinguishes this case from both *Jebian* and *Gatti*. The administrator in *Jebian* issued its decision one month after the plaintiff filed suit in district court – in violation of the time limits set forth in the plan and regulations. And in *Gatti*, the administrator decided the plaintiff's appeal after the regulatory deadline passed, but before the plaintiff filed suit. *Gatti*, 415 F.3d at 981. Here, however, Hartford has not made any decision on Veilleux's appeal – a fact for which both parties are quick to blame the other.

According to Hartford, it was in the process of making a determination on Veilleux's appeal, and had been engaged in a good faith dialogue with her as contemplated by *Jebian*, when she chose to shortcut the administrative process by filing suit. Hartford does not dispute that Veilleux was deemed to have exhausted her administrative remedies by the time she initiated this litigation on June 15,

2012.[4]  Instead, Hartford claims that because Veilleux had exhausted her remedies and filed suit, it was no longer "required to render an appeal decision as this Court now possesses jurisdiction over Ms. Veilleux's claims." Dkt. 24, at 11.   As Hartford sees it, then, the fact that it has not issued a decision on Veilleux's appeal is not a procedural irregularity at all.  And even if it was, Hartford maintains the irregularity was not "so flagrant as to alter the substantive relationship between" the parties and thereby change the standard of review from abuse of discretion to de novo.  *Gatti*, 415 F.3d at 985.

Veilleux points out in response that she waited a week after the 45-day period expired before filing her complaint.  And while Hartford had written to Veilleux explaining that it believed it had until July 23, 2012, within which to decide her appeal, Veilleux did not receive that letter until June 18, 2012 – three days after she had initiated litigation.  Veilleux states that once she received Hartford's letter, she indicated to "Hartford that she would not serve the Complaint until July 23, 2012, which was 90 days after her appeal was delivered and would give the Hartford the full 90 day window, which began April 23, 2012,

_____

    [4]  Hartford received Villeux's appeal on April 23, 2012, which means that the 45-day period for deciding the appeal, as established by 29 C.F.R. § 2560.503.1(3)(i), would have passed on June 7, 2012.   Hartford does not argue that this 45-day period was tolled for any reason, and does not claim to have obtained the 45-day extension allowed under the regulation.

15

to make its decision."[5]  Dkt. 27, at 3-4; 27-4.  Veilleux therefore maintains that she

gave Hartford "every opportunity to follow the appeal process prior to further

pursuing litigation," and in no way short circuited the administrative appeals

process.  Dkt. 27, at 4.  But because Hartford never did decide her appeal, Veilleux

takes the position that it failed to comply with the terms of the Plan, which at the

outside required a decision on her appeal within 120 days, and entirely failed to

exercise its discretion, thereby entitling her to de novo review under *Jebian* and

*Gatti*.[6]

As discussed above, however, *Jebian* and *Gatti* are both distinguishable

because: (1) the plan administrators eventually resolved the plaintiffs'

administrative appeals, and (2) the ERISA regulations have since been amended to

eliminate the "deemed denied" language that was central to each court's analysis.

Several district courts within the Ninth Circuit have struggled with how to apply

*Jebian* and *Gatti* in light of the amended regulation and where, as here, the

---

[5]  The letter actually advised Hartford as follows: "W have filed a claim in federal court for Ms. Veilleux's benefits, which we sent to you with our letter dated June 20, 2012.  We would be willing to discuss a lump sum payment for Ms. Veilleux.  Please respond to this letter by July 23, 2012 or we will proceed with the lawsuit."  Dkt. 27-4.

[6] The 120 day period expired on August 21, 2012 – approximately two months after Veilleux filed her complaint.

administrator has not issued any decision whatsoever on the administrative appeal. Not surprisingly, these courts have reached different conclusions, with some adhering to abuse of discretion review and others applying a de novo standard. See e.g. *Langlois v. Metropolitan Life Ins. Co.*, 833 F.Supp.2d 1182, 1188 (N.D. Cal. 2011) (applying de novo review); *Roach v. Kaiser Permanente Long Term Disability Plan*, 2009 WL 1357394 *7 (C.D. Cal. May 12, 2009) (applying de novo review); *Kowalski v. Farella, Braun & Martel, LLP*, 2007 WL 2123324 *2 (N.D. Cal. July 23, 2007) (applying de novo review); *Hinz v. Hewlett Packard Co. Disability Plan*, 2011 WL 1230046 (N.D. Cal. Mar. 30, 2011) (applying abuse of discretion review); *Cushman v. Motor Car Dealers Services, Inc.*, 652 F.Supp.2d 1122, (C.D. Cal. July 27, 2009).

In *Cushman,* for example, the plaintiff submitted her administrative appeal in April 2008, and filed suit in district court approximately four months later. *Cushman*, 652 F.Supp.2d at 1126. The plan at issue did not contain the "deemed denied" language. By the time of the court's decision on the standard of review in July 2009, the administrator had "completely ignored Plaintiff's appeal for more than year." *Cushman*, 652 F.Supp.2d at 1129. The court agreed that the administrator's failure to issue a decision was a serious procedural irregularity, but concluded it was not so flagrant as to require de novo review. *Cushman*, 652

F.Supp.2d at 1130.   The court ended up reviewing the  administrator's initial

decision for an "abuse of discretion, tempered by a large amount of skepticism."

*Cushman*, 652 F.Supp.2d at 1131.  In doing so, the court made every effort "to

recreate what the administrative record would have looked like had the appeals

procedure been properly followed," and so considered the additional information

the plaintiff had submitted in support of his administrative appeal.  *Cushman*, 652

F.Supp2d at 1131.

In *Hinz*, the plaintiff submitted her administrative appeal in January 2010.

Under the plan, the administrator had a 90-day period to render a decision.  But

the administrator never issued a decision and the plaintiff filed suit nearly four

months after the 90-day deadline had passed.   *Hinz*, 2011 WL 1230046 *1.  As in

*Cushman*, the plan at issue did not contain the "deemed denied" language.

Following *Cushman*, the *Hinz* court reviewed the initial denial of the plaintiff's

claim for an abuse of discretion, but "with a heightened degree of skepticism," and

also considered the  additional evidence submitted by the plaintiff in support of

her administrative appeal.  *Hinz*, 2011 WL 1230046 *5.

Other courts have held otherwise, applying de novo review under analogous

circumstances.  In *Langlois*, for example, the plan paralleled the regulations and

required the administrator to decide the plaintiff's appeal within 45 days, with one

45 day extension possible. *Langlois*, 833 F.Supp. 2d at 1186. The plan did not contain the "deemed denied" language. The plaintiff appealed the denial of his claim for long term disability benefits on March 4, 2011. But after the administrator failed to render a determination on the appeal within the applicable 90-day time limit, the plaintiff filed suit on July 11, 2011. *Langlois*, 833 F.Supp. 21d at 1184. By the time of the court's hearing on the standard of review, which took place 287 days after plaintiff had submitted her administrative appeal, "the defendant had yet to issue a decision." *Langlois*, 833 F.Supp.2d at 1186.

At issue was whether "defendant's failure to issue a timely decision – or rather, failure to issue *any* decision by the time the parties sought a determination of the appropriate standard of review – deprive[d] defendant of the deference to which it would otherwise be due." *Langlois*, 833 F.Supp.2d at1186. The court held that it did, finding that "[i]n such an instance, the administrator has "forfeited the privilege to apply his or her discretion." *Langlois*, 833 F.Supp.2d at 1188 (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006)). *Langlois* explained "that because the plan administrator failed without good cause to resolve plaintiff's administrative appeal by the time the appropriate standard of review was to be determined by the district court, the de novo standard of review applies." *Langlois*, 833 F.Supp.2d at 1188.

This Court is convinced that, under the circumstances, *Cushman* and *Hinz* represent the better reasoned approach. Hartford does not dispute that the 45-day period provided for by regulation ran on June 7, 2012, thereby deeming Veilleux's administrative remedies exhausted and providing her with the procedural mechanism for bringing this lawsuit. At that time, however, the parties were engaged in a good faith exchange of information. In fact, just before the 45-day deadline ran, Veilleux submitted additional, unsolicited medical records for Hartford's review. Hartford received those records on June 8, 2012. A.R. 1023. Likewise, Hartford advised Veilleux in a letter dated June 14, 2012, that it considered her appeal to have been perfected on the date it received those unsolicited medical records and was referring her file to a medical consultant for an assessment.[7] A.R. at 1023. But by the time Veilleux received that letter, she had already initiated this lawsuit. The parties' good faith exchange of information thus came to end without any decision by Hartford on Veileux's administrative appeal.

By the time Veilleux filed her complaint on June 15, 2012, Hartford was in

---

[7] Hartford does not argue that Veilleux failed to exhaust her administrative remedies, apparently abandoning the position it took on June 18, 2012, which was that the 45-day period for deciding her claim had not begun to run until it received her unsolicited medical records.

violation of ERISA regulations because it had not issued a decision within 45-days of receiving her appeal. Under *Gatti*, however, that was not enough to shift the standard of review. *Gatti*, 415 F.3d at 982. Veilleux argues Hartford also violated the terms of the Plan because it did not make a decision on her appeal within the 120 days allowed by the Plan. Dkt. 27, at 4. But the Plan's 120-day deadline did not pass until August 21, 2012 – several weeks after Veilleux had filed her complaint in federal court.

Hartford claims that the administrative record closed once Veilleux had exhausted her administrative remedies and filed suit, at which point it was no longer required to make a decision on her administrative appeal. Even Veilleux agrees that "it is not well established that a plan may render a decision after a Complaint is filed." Dkt. 27, at 7. As Veilleux recognizes, the Ninth Circuit indicated in the unpublished, non-precedential case of *Neathery v. Chevron Texaco Corp. Group Acc. Policy No.Ok-826458 & Acc. Policy No. SLG-00784,* 2008 WL 5233207 *1 (9th Cir. 2008) that "[t]he passing of ERISA deadlines does not, by itself, signal the close of the administrative record, because it does not necessarily 'alter the substantive relationship' between the parties." It is when the claimant actually files suit that "the relationship of the parties [has] changed[,]" and the administrative record closes. *Neathery,* 2008 WL 5233207 *1.

In *Steinke v. Metropolitan Life Ins. Co.*, 2010 WL 3038728 *7 (D. Ariz. Aug. 3, 2010), the district looked to *Neathery* for guidance in identifying the applicable standard of review.  In *Steinke*, the plaintiff had filed suit after the 45-day regulatory time frame expired for the plan administrator to make its decision, but the administrator nevertheless issued a decision, albeit after suit had been filed.[8]  *Steinke*, 2010 WL 3038728 *1.  The 45-day deadline passed on July 9, 2007, the plaintiff filed suit on October 11, 2007, and the administrator issued a decision on the plaintiffs appeal in March 2008.  *Steinke*, 2010 WL 3038728 *7-8. Citing *Neathery*, the court concluded that the act of filing the lawsuit in October 2007 "so altered the relationship between the parties" that the administrative record could be said to have closed some three months earlier, with the passing of the 45-day deadline established by regulation.  *Steinke*, 2010 WL 3038728 *8. Because the administrator relied on doctors' reports created after the administrative record had closed in making its final decision, the court decided it could not give any deference to the administrator's decision and so applied a de novo standard of review.  *Steinke*, 2010 WL 3038728 *8.  Applying the logic in *Neathery* and *Steinke* here, the administrative record in this case had closed by

---

[8] There is no mention in *Steinke* as to whether the plan contained any similar deadlines.

22

June 15, 2012, with the filing of Veilleux's lawsuit.

At that point, abuse of discretion would have been the appropriate standard of review because Hartford had not violated any deadlines set forth in the plan and was engaged in a good faith dialogue with Veilleux, which arguably excused its failure to make a decision within the 45-day period set by regulation. While Hartford's failure to issue a decision on Veilleux's appeal is a serious procedural irregularity, it is not so flagrant and severe as to alter the standard of review from abuse of discretion to de novo.

This Court agrees with *Cushman*, that "[t]he plan administrator exercised its discretion in denying plaintiff's original claim," which means that "[e]ven though there has been no decision on appeal, it would be inaccurate to say that the administrator entirely failed to exercise discretion in this case." *Cushman*, 652 F.Supp.2d at 1130. As in *Cushman*, this Court's ultimate role will be "to determine whether that initial decision to terminate plaintiff's long-term benefits was an abuse of discretion." *Cushman*, 652 F.supp.2d at 1130. In making that determination, this court will likewise "apply a large amount of skepticism" when reviewing Hartford's initial decision. And in an "attempt to recreate what the administrative record would have looked like had the appeals procedure been properly followed," the Court will also consider any additional evidence that

Veilleux submitted in support of her administrative appeal. *Cushman*, 652

F.Supp.2d at 1131.

 At this juncture, however, the sole issue is whether, and to what extent,

Veilleux should be allowed to pursue discovery in light of the applicable standard

of review.  Assuming, as this Court has decided, that abuse of discretion review

applies, Veilleux asks that she be allowed to conduct discovery on several subjects

regarding  Hartford's alleged conflict of interest.  Veilleux points to evidence that

Hartford was operating under a structural conflict of interest because it was

responsible for making benefit determinations and for paying those benefits.  A.R.

at 63-67; 1031-35.   Hartford does not point to any evidence to the contrary.

When abuse of discretion is the applicable standard, the "court may, in its

discretion, consider evidence outside the administrative record to decide the

nature, extent, and effect on the decision-making process of any conflict of

interest." *Abatie*, 458 F.3d at 970.  Veilluex proposes a range of discovery which

she claims is designed to delve into the nature and extent of the structural conflict

under which she alleges Hartford was operating when it terminated her benefits.

Dkt. 20, at 12-14.

Hartford concedes that, "[a]t this stage of the proceedings, it appears that

most of the conflict of interest discovery topic areas requested by" Veilleux are

24

appropriate.  Dkt. 24, at 17.  But Hartford contends that some of Veilleux's proposed discovery requests are objectionable because, among other things, they seek discovery of information that is confidential and irrelevant, and that is not reasonably tailored to the conflict of interest inquiry.  Hartford thus "reserves its right to object to and seek a protective order regarding specific discovery requests and further reserves the right to produce confidential documents under a protective order."  Dkt. 24, at 17.  With that understanding, Veilleux's is entitled to conduct discovery into the nature and extent of the conflict of interest under which Hartford was allegedly operating when it terminated her disability benefits.

### III.    Conclusion

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Leave to Conduct Discovery is GRANTED IN PART and DENIED IN PART as set forth above.

DATED this 20th day of December, 2012

Jeremiah C. Lynch
United States Magistrate Judge